598 So.2d 94 (1992)
Keith FREDERICKS, Petitioner,
v.
Wallace E. STURGIS, and Chester J. Trow, Respondents.
No. 91-2399.
District Court of Appeal of Florida, Fifth District.
March 20, 1992.
On Motion for Rehearing May 29, 1992.
*95 Keith Fredericks, pro se.
Wallace E. Sturgis, pro se.
Chester J. Trow, of Chester J. Trow, P.A., pro se.
Robert A. Butterworth, Atty. Gen., and George L. Waas, Asst. Atty. Gen., Tallahassee, for respondent Honorable Raymond T. McNeal.
W. SHARP, Judge.
Fredericks seeks review by certiorari of an order holding him in willful civil contempt, sentencing him to thirty days confinement in jail, but allowing him to "purge" himself by paying $200 to a mediator and $150 to an attorney who represented a plaintiff (Palm Chevrolet, Inc.) in a civil suit against Shirley Ann Richards, Fredericks' client. We quash the order on the ground that it was not entered in compliance with either the rules governing criminal contempt[1] nor the requirements governing civil contempt.
This matter grew out of a civil suit filed by Palm Chevrolet against Richards, seeking a money judgment. The trial court ordered the parties to mediation. Among other things, the court specified that the parties and the attorney who was going to try the case must attend the mediation conference. In the event of a default, the court said it would impose sanctions against any party.
The mediation conference date was set. Fredericks argued he tried to reschedule the date because Richards had moved out of town and was unavailable. The plaintiff was apparently represented by various and successive attorneys. Fredericks claimed some confusion on his part because Chester Trow was planning to attend the conference but he was not then attorney of record. Trow denied Fredericks asked him to reschedule the conference.
Trow and his client attended the mediation conference but Fredericks and Richards failed to appear. The mediator reported their default to the trial judge and requested $200 for his time and effort and $150 for Trow's compensation. The trial judge then entered a show cause order directed to Fredericks and his client as to why they should not be held in civil contempt of court for failure to appear at the conference.
Fredericks' explanation at the show cause hearing did not impress the judge. The judge rejected Fredericks' explanation about the confusion as to who represented the plaintiff, the delay in the plaintiff's setting the conference after the mediation order was entered (beyond ten days) and the confusion resulting from Fredericks' moving his law office. The trial court found that Fredericks deliberately and willfully failed to attend the mediation conference.
At the show cause hearing, Fredericks asked that the trial judge order that the mediation conference be rescheduled for the reasons outlined above. Fredericks also told the judge he was about to be suspended from the practice of law for failure to pay his bar dues. Because the suspension was to take effect the next day, the trial judge refused to consider rescheduling the conference. However, at that point it was also clear that Fredericks could not have appeared as Richards' trial counsel, as was also required by the mediation order.
Primarily based on the mediator's report that Fredericks and Richards had failed to appear, the trial judge entered the contempt order under review in this case. No one testified that Fredericks was able to pay the $350 order to "purge." Apparently, a relative of Fredericks' wife had to pay the sums to Trow and the mediator. Fredericks *96 claims he is insolvent and completely without assets and income.

SANCTIONS
Section 44.102, Florida Statutes, permits a court to order parties to engage in mediation. Florida Rule of Civil Procedure 1.720(b) allows a court to impose sanctions on a party if the party fails to appear at a duly noticed mediation conference. But in this case, the court did not impose sanctions against a party. It struck solely at the attorney for one party and imposed the sanction of contempt. There is no basis under this statute or rule to impose sanctions on a party's attorney as occurred in this case.

CRIMINAL CONTEMPT
If there were a basis for direct criminal contempt in this case, the trial court's summary actions below might be affirmed by us. However, no action by the offending person (here Fredericks) took place before the trial judge. To constitute direct criminal contempt, the offending person must do something in the trial court's presence.
In E.T. v. State, 587 So.2d 615, 616 (Fla. 1st DCA 1991), the court noted that:
The distinction between direct and indirect contempt is fundamental. Where the contemptuous conduct is committed in the immediate presence of the court, the contempt is defined as direct; where it is committed outside the court's presence, the contempt is indirect... . Whereas direct contempt may be punished summarily with the accused having only the opportunity to present evidence of excusing or mitigating circumstances, the procedures applicable to indirect contempt are more formal in nature... . It is well established that summary adjudication for direct contempt is not permitted where the alleged conduct took place, not in the presence of the judge, but at an earlier time and before a different trial judge.
Contrary to respondent's contention, Wells v. State, 471 So.2d 620 (Fla. 5th DCA), cause dismissed, 478 So.2d 54 (Fla. 1985), does not stand for the proposition that a willful violation of a court order is always a direct contempt. In Wells, an assistant public defender was found in direct criminal contempt for continuing his closing argument after the court had advised that his time had expired. Clearly this contemptuous act took place in the trial court's presence. Although E.T. is also relied on by respondent, the contempt in that case, wearing shorts in the courtroom before another judge at an earlier hearing, was held to be indirect since the act did not occur before the judge who presided over the subsequent contempt hearing.
Similarly, in this case the act of contempt, failing to appear for the mediation conference, did not occur in the judge's presence. It thus constituted indirect (rather than direct) contempt. See also Fisher v. State, 248 So.2d 479 (Fla. 1971) (failure of attorney to appear for trial after being ordered to continue representation not properly characterized as direct criminal contempt); Lowe v. State, 468 So.2d 258 (Fla. 2d DCA 1985) (attorney in indirect criminal contempt for failing to appear at non-jury trial). Since this was indirect contempt rather than direct contempt, summary disposition was not available.
If the action taken by Fredericks was possible grounds for indirect criminal contempt, the order below cannot be sustained because the response filed in this case shows that the procedural requirements of Florida Rule of Criminal Procedure 3.840 were not followed. For example, notice must be given to a person that he is charged with criminal contempt. Bowen v. Bowen, 471 So.2d 1274 (Fla. 1985). In this case the rule to show cause did not specify that the petitioner was charged with criminal contempt. Further, there is no indication that the defendant was advised of his rights under rule 3.840 or that any party was aware of that rule's application. Also, an award of attorney's fees for another party or a court's wasted time in a criminal contempt proceeding is improper. See State v. Shelton, 584 So.2d 1118 (Fla. *97 5th DCA 1991); Dowis v. State, 578 So.2d 860 (Fla. 5th DCA 1991); Routh v. Routh, 565 So.2d 709 (Fla. 5th DCA 1990).
Finally, in Lowe, supra, the court stated that generally, the mere failure of an attorney to timely appear for trial will not support a criminal contempt proceeding, except in those rare cases where the evidence is sufficient to support the conclusion that the failure to appear was calculated to embarrass, hinder and obstruct the court in the administration of justice and lessen the court's authority or dignity. Such a finding was not made in this case. Also, in Fisher, the court noted that "Contempt for failure to perform an act judicially commanded, even though the performance may be incidentally for the purpose of preserving the court's power and dignity, is usually referred to as civil contempt." 248 So.2d at 487. The court in Fisher held that counsel's refusal to appear at trial and continue to represent a party although ordered to do so was more in the nature of a civil contempt.

CIVIL CONTEMPT
Civil contempt is the horse the trial judge chose to "ride" in this case. Without determining now whether or not it was appropriate for these circumstances, we note that civil contempt cannot be sustained in this case primarily because there was no finding by the trial court that Fredericks had the present ability to purge himself of contempt. Bowen, supra. See also Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977); Dowis, supra. The courts are adamant that before a valid order of incarceration for civil contempt can be entered there must be a finding that the contemnor has the present ability to purge himself of the contempt. See, e.g., Bowen, supra; Faircloth v. Faircloth, 339 So.2d 650 (Fla. 1976); Maudlin v. Roman, 588 So.2d 667 (Fla. 5th DCA 1991); Dowis, supra; Broyles v. Broyles, 573 So.2d 357 (Fla. 5th DCA 1990), rev. dismissed, 584 So.2d 997 (Fla. 1991); Campbell v. Campbell, 571 So.2d 555 (Fla. 4th DCA 1990), cause dismissed, 581 So.2d 163 (Fla. 1991). No such finding was made in the contempt order entered in this case and the argument that petitioner's status as a lawyer obviates such a finding is specious. In a civil contempt proceeding, the contemnor must hold the keys to his or her cell.
The nature of the two kinds of contempt (civil or criminal) is often confused. In Fisher, the court emphasized that it is the character and purpose of the punishment which is controlling. "If its character and purpose are to enforce the performance of a right primarily for the benefit of a litigant, it is usually characterized as civil in nature and governed by proceedings governing civil contempts rather than criminal contempts." Id. 248 So.2d at 487. The majority of civil contempt cases arise in dissolution proceedings where a party has failed to pay alimony or child support. See, e.g., Broyles, supra. The purpose of the punishment in those cases is clearly to coerce compliance with the order to pay alimony and/or child support.
In this case, there was an order on mediation providing that attendance at a to-be-scheduled mediation conference was mandatory. Petitioner failed to attend and was found in contempt and jailed for thirty days, with the ability to purge himself by paying fees to the mediator and to the opposing party's attorneys. The purge order benefits the opposing party, although indirectly.
In Johnson v. Bednar, 573 So.2d 822 (Fla. 1991), the court stated:
Sanctions in civil contempt proceedings may be employed for either or both of two purposes: to compensate the injured party for losses sustained, and to coerce the offending party into compliance with a previously issued court order ... If compensation is intended, the fine must be based on evidence of the injured party's actual loss ... However, if the purpose of imposing a fine is to coerce compliance the court may excuse its discretion, taking into consideration the character and magnitude of the harm threatened by the contumacy, and the probable effectiveness of a particular sanction in achieving the result desired.
*98 Id. at 824 (Emphasis added). Johnson involved a contempt citation for willfully violating an injunction and the sanction imposed was assessment of a fine of $25,000. See also South Dade Farms v. Peters, 88 So.2d 891 (Fla. 1956) (where violation of a decree has resulted in damages to the injured party, there is authority for the assessment of a compensatory fine to be paid by the wrongdoer); Lamb v. Fowler, 574 So.2d 262 (Fla. 1st DCA 1991) (assessment of fines, attorney's fees and costs as sanctions for civil contempt is authorized). Compare Dowis, supra (award of attorney's fees for prosecution of criminal contempt is without authority).
The hourly fee of the mediator in this case was set in the original order and the mediator indicated he charged a minimum of one hour. The fees of opposing counsel were also apparently supported by testimony presented at the contempt hearing. Thus, both sums set in the purge order could be justified under Johnson.
Petitioner also argues civil contempt cases must be initiated by a motion, not by a rule to show cause. In Smith v. Smith, 464 So.2d 1287 (Fla. 5th DCA 1985), this court stated in dicta that a motion for civil contempt may be a proper method to initiate a proceeding to enforce the terms of a prior court order. Also, in Bowen, the court noted in a footnote that civil contempt proceedings should be instituted by a motion and notice. In Nicholson v. Nicholson, 311 So.2d 676 (Fla. 4th DCA 1975), it was held that a rule to show cause is no longer available in civil proceedings but has been supplanted by motion. Classically, civil contempt is initiated by motion of a party. Pugliese, supra. Nonetheless, nothing prohibits the initiation of a civil contempt proceeding by the filing of a rule to show cause. In the absence of prejudice or harm, the use of a rule in this case should not be deemed a departure from the essential requirements of law.
However, as indicated previously, the court was required to find that petitioner had the present ability to purge himself of contempt by paying the sums designated. Although petitioner makes much of the fact that he only had $4.00 with him at the time of the hearing, it is clearly not necessary that the contemnor have the purge amount on his person to establish ability to pay, so long as the contemnor has some asset available to use to unlock the jailhouse door. See, e.g., Bowen, supra (the court may look to all assets from which arrearage could be obtained to determine present ability to pay). In most civil contempt proceedings, which involve family support cases, a judgment has previously been entered directing the payment of support which was predicated upon a finding of ability to pay, so in subsequent proceedings there is a presumption of the ability to pay. In this case, no such presumption exists and the absence of the finding is a fatal defect which requires quashal of the order so long as it is deemed a civil contempt order.
Accordingly, we grant the petition for writ of certiorari, quash the order of contempt, and remand for further proceedings.
Petition GRANTED; Order of Contempt QUASHED; REMANDED.
COWART, J., concurs.
GRIFFIN, J., concurs in result only.

ON MOTION FOR REHEARING.
PER CURIAM.
Petitioner has filed a motion for rehearing, reconsideration and for certification of a question to the Florida Supreme Court. We deny his motion in toto except that we agree we erred in misnaming the party defendant in the tribunal below. Our apologies. We hereby correct our previous opinion and direct that the reference therein to Shirley Ann Roberts be changed to Shirley Ann Richards.
W. SHARP, COWART and GRIFFIN, JJ., concur.
NOTES
[1] Fla.R.Crim.P. 3.830 (direct criminal contempt); Fla.R.Crim.P. 3.840 (indirect criminal contempt).